Case number 15358, Joseph Brown, individually, and as an administrator of the United States Good morning. John Bace, Vice Junior for the City of Cleveland, Assistant Director of Law, City of Cleveland officers. I'd like to reserve three minutes for rebuttal please. Thank you. We're here for two parts of this matter. The first one has to do with the portion where summary judgment was denied as to Officers Merritt, Rusnick, and Sergeant Sattler regarding a deliberate indifference to a serious medical need. And there are really three issues here that I'd like to talk about this morning. Obviously, they're all in our briefs. The first is that plaintiffs, appellees, simply failed to plead this claim regarding Merritt, Rusnick, and Sattler. They failed to plead any deliberate indifference claim. And there was some anticipation by us as Defendant's Counsel that we would see a deliberate indifference claim. But we thought it was specific to a recording that was captured of a different officer saying in response to Mr. Brown's statement that he cannot breathe, who gives a fuck? We never envisioned that there would be an issue regarding what was happening once Mr. Brown was already in the back of the police zone car. Counsel for appellees has pointed to an email that was sent to me after the close of discovery, after the close of expert discovery, stating very generally that they were looking at 4th and 14th Amendment violations for all of the officers. But if you're talking about a pleading, that email as I point out in my briefing, doesn't meet the Iqbal Twombly standard. It's a simple these defendants unlawfully harmed me is the statement that they made at best. And they made it so late in the game that we wouldn't have an opportunity to properly defend ourselves. In a deliberate indifference to a serious medical need claim, one of the things we could have and I likely would have done had we had any idea that Rusnick, Sattler, I'm sorry, Rusnick, Sattler, and Merritt would be facing this would probably look for a medical expert to point out that at this point in time, in the sequence of events, that whatever they could have or would have done wouldn't have made a difference. But we didn't have that opportunity because the claim was never pled. And that alone I believe is dispositive. Were there statements in the complaint or the amended complaint that did raise deliberate indifference? The only statement that raised it, if you look at their recitation of the facts, is they do point out in the recitation of the facts Melinda saying who gives a fuck. They make no specific statements in the recitation of the facts regarding Merritt, Rusnick, or Sattler doing anything or failing to do anything that would constitute deliberate indifference to a serious medical need. That's the first issue I'd like to talk about this morning. The second, and this is the most brief to discuss, is I believe the court did apply the wrong standard. I believe that while the court points out and looked at the amount of time from when EMS was called to when EMS arrived and saying that was enough time for Mr. Brown's condition, I submit that Mr. Brown did not show serious medical need, and you can look at the testimony of Rusnick, Sattler, and Merritt, until the officers could already hear the sirens of the EMS ambulance approaching. And the estimated amount of time is about a minute to a minute and a half, is from the point of time where it really showed serious medical distress to where the ambulance arrived. What about the statement, I cannot breathe, I cannot breathe, why doesn't that show serious medical distress? Because of the context, and obviously that will be discussed in the next argument, but the statement was made generally, and it was made while Mr. Brown was still successfully fighting off five, six, seven Cleveland police officers. So saying I can't breathe is no I didn't do it. It was simply something that given the context, there was absolutely no reason to give that statement any credence. He was viciously fighting off the officers for many minutes after that statement was made. And that vicious fighting continued not only through when they finally got him into the back of the zone car, but once he was in the back of the vehicle, he was kicking at the windows, he was screaming, he was snarling, he was still fighting. There was nothing about that statement at this point in time would have been five, ten, fifteen minutes before to give it any credence. And so I don't believe that that, I believe that the wrong standard was applied here. Finally, I believe that the court, the district court did misapply the law here. They looked at Owensby and they looked at Jones, both cases against the city of Cincinnati, so right from here in this neighborhood, at the deliberate indifference standard. And I believe that what the court said is merely calling EMS may not be enough to avoid a deliberate indifference to serious medical need. But they didn't merely call EMS. These officers did other affirmative acts. Now they may not have been perfect, but these are not doctors. These are not nurses. They're just doing the best that they could. What they did, amongst other things, is they attempted to monitor and speak to Mr. Brown. They checked his pupils for dilation. They rolled down the windows of the vehicles expressly to get him more air, which is what you would do if someone is, you believe, they're having trouble breathing. Then eventually, Sergeant Sattler, when he arrives, orders them to take Mr. Brown out of the vehicles expressly for the purpose, as EMS is approaching, so that EMS could more quickly gain access to Mr. Brown. I think that this absolutely distinguishes this case from both Owens v. Jones, which were both very callous cases, were based on the allegations as they arrived at this circuit, where the officers beat somebody, this is both Owens v. Jones, and then were not only indifferent, but were basically joking around about their serious medical needs. In this case, the officers were affirmatively acting in an attempt to help Mr. Brown. I think that there was just a misapplication of the law here as to the deliberate indifference standard based on the actions of my clients. I got through that pretty quick. I guess the question, you are giving us one view of the facts, and isn't there a fact issue? You're complaining that the district judge wrongfully denied qualified immunity, right? In this matter, yes. So if there is a fact issue of viewing the facts in the light favorable to your clients versus viewing the facts in the light favorable to the plaintiff here, why do we even have jurisdiction? There is no fact issue, Your Honor. But you've given us the facts in the light most favorable to your clients. There's no testimony on the record from this portion of the event other than the testimony of my clients, and then after the EMS arrived, the testimony of EMS. Weren't there some witnesses at or near the scene who observed part of the incident where they said that one of the officers elbowed the man without, from what they could tell, seeming justification, and rather than him being resisting, he was actually elbowed and mistreated and perhaps unnecessarily tasered, and maybe that's why he sought to flee the scene. In other words, there is some other testimony and evidence that would run counter to your version you just gave us. With all due respect, those issues deal with the appeal that we will be arguing next. This specific issue, this deliberate indifference claim, all comes out of after Mr. Brown was taken into custody in the back of the zone car. The two witnesses who viewed that event, and if you look at their declaration, they're completely silent as to everything that happened after Mr. Brown took off running because it was two streets away. They didn't follow it. Okay, but in terms of his being taken into custody, isn't there some discrepancy about the use of the taser on him after he was taken into custody or in the process of his being taken into custody? I mean, these facts kind of relate together to some extent. Well, Your Honor, based on the district court's ruling, I would disagree with you in that they relate together. I mean, certainly they're part of one narrative. However, as I understand it, the only use of the taser that's being challenged, and, again, that's not this appeal. That's the next appeal where I'm acting as the appellee that we're going to deal with. But the only use of the taser— But in terms of the facts, the facts themselves, we can't separate the facts between the two cases. It was one set of transactions and occurrences that transpired there at the scene. You would agree with that, wouldn't you? Well, there were multiple scenes, Your Honor. That's the first thing you have to remember. I agree with you that, of course, it's one contiguous event. But the two declarations that were provided, those people only viewed the very beginning of this. They never viewed Officers Merritt, Rusnik, or Sergeant Sattler. And that's the three people that this appeal is about. This appeal is not about anyone who used a taser. This appeal is not about anyone who allegedly struck Mr. Brown in the back of the neck near a zone car. This appeal is not dealing with that. We'll deal with that in about 20 minutes. This appeal is simply about the deliberate indifference to a serious medical need against only Officers Merritt, Rusnik, and Sergeant Sattler. And those two people who submitted declarations are completely silent as to anything that those three people did, the reason being they weren't on the scene. This foot chase went, I believe, two blocks away from where the original stop happened. So there is no version of events other than the version of events testified. Were any of these three officers involved in the initial stop? No. None of these three officers were involved in the initial stop. So the key then is, is there a fact question as to whether the actions that they took that you were identifying or didn't take constituted deliberate indifference to a serious medical need? Your Honor, the key, I believe, is that the district court, well, first of all, it never should have gotten there because they failed to plead it. In addition, the district court did misapply the law that on the undisputed fact, this does not meet deliberate indifference to a serious medical need. You look at Owensby, you look at Jones, where the court did find there was a question of deliberate indifference. And they are easily distinguishable from the behavior of Officers Rusnik, Merritt, and Sergeant Sattler in this matter. They actually did try to help Mr. Brown. It wasn't perfect, but they're not doctors. They're not nurses. You know, they're going to talk about CPR. There is no case out there that requires officers to give CPR, but I can discuss that in my rebuttal time. I see I'm out of time. Thank you. Good morning. Al Gerhardstein, on behalf of Rodney Brown's estate, I'm here with his mother and members of the Rodney Brown family, and there are serious disputed facts with respect to the medical care that was not given to Mr. Brown while he was in the cruiser. And we know this because, first, we have these officers taking Mr. Brown to the curbside before EMS gets there. Kind of an unusual move to move this man. And they prop him up. EMS actually says that the man was propped up against one of their legs. And Officer Rusnik says Mr. Brown was still breathing then. EMS says not only was he not breathing, but he was in cardiac arrest. He was in full arrest. They never brought him back. He was dead. Why isn't this just the officers not knowing how to deal with somebody who is in a medical situation or having medical difficulty? That's what the trial should be about. But if they're going to lie, and they're going to say he was lying, was breathing, when EMS says he's not breathing, we have to get to a jury to discuss this. And that's what the trial has to be about. And then let's back up from that serious discrepancy. We have 15 minutes before, Mr. Brown saying, I can't breathe, Officer Melendez saying, who gives a fuck? And then we have Mr. Brown being put in the back of the cruiser. Officer Rusnik saying, yeah, I heard him say he couldn't breathe then, too. So is that the first time that one of these three officers is involved when Rusnik hears Mr. Brown saying that he couldn't breathe when he's put in the cruiser? No, the officers were involved with the altercation that put him into the cruiser. It was Merida and Rusnik's cruiser that they went into. But I'm not filing a lawsuit over the wrestling match that occurred between the tasing and putting him in the cruiser. I understand that once he ran and the officers tried to restrain him, they used a certain amount of force that we're not going to challenge. But, go ahead, that's fine. But where in your amended complaint is this claim raised? It's not there. I mean, I understand that, and we did not plead deliberate indifference to a serious medical need in the amended complaint. It was one of those claims that you discover through discovery. I mean, we took depositions. I took the EMS deposition, and then I realized that we have a pretty dramatic difference of opinion here about what happened, including all the indicia in the car, including the fact that Mr. Brown was grunting, that he was saying, I can't breathe, that he was mumbling, that this struggle that Mr. Baisweiss is talking about could well have been his gasping for breath. And we figured that out. You have moved for leave to file a second amended complaint raising this? Yes. I should have, and I offered to as we got into discovery, I mean, as we got into the briefing. I did send a very detailed email, because I know Jack. We've been litigating cases against each other for a while, and I knew he had his motion coming up. And I said in very clearly, with respect to the remaining individual defendants, we are alleging that they violated Fourth and Fourteenth Amendments by failing to monitor and basic first aid to Brown after they had noticed that Brown was having trouble breathing. You're right. I should have put it into a formal motion. I offered to put it into a motion when I realized that he was going to make a deal out of it. The court, this is an abuse of discretion standard. They had noticed. They were seeing the same set of facts unfold that I was seeing. We discovered it. I alerted him to it. That's a month before his motion practice. If he wanted to go get an expert, we could have dealt with it then. He can't wait until now and say, oh, I never had a chance to get an expert. I mean, we know how to do this stuff. We've been litigating. I've been doing this 39 years. There's a way to do this that everybody gets their day in court. And it's not an abuse of discretion for the court to say, all right, he had enough notice. I'm going to go ahead and allow this claim to go forward. And if he wants to bring it up again when we go back, he can bring it up again if he wants to do some additional discovery or something on the claim. But the point is that what we learned is that there are dramatic facts that make this an important issue that should be litigated. I mean, Officer Resnick understood that this man was not able to breathe in the car. And he even looked inside the car, and he says his pupils were fixed. And I know he thinks a lot of people they arrest are on drugs, and so he doesn't make a big deal out of it. But the fact is this man had no drugs on board. He had a marijuana metabolite that was very low. It showed old use under Ohio law that was way below the level that would even allow anyone to prosecute him for operating a vehicle under the influence. There were no drugs on board. He was having trouble breathing because of the tasings, because of the struggle. And while that initial tasing, as our expert shows and we'll talk about in the next appeal, did serious damage to him and substantially contributed to his death, these officers are on the hook because they saw this developing. And they knew he was no longer a risk. They opened the door to the car. He uses that as an example of all the good care that they were trying to give him. I use it as an example that they were on notice, that he's no longer a serious risk. He's a man that's dying. And we ought to, you know, we have something going on here. I mean, he's opening the door to the car, he's opening the windows to the car, and he doesn't even tell EMS that this man's becoming a non-breather. And he does become a non-breather. Sattler says when he looked at him, he was unresponsive. Resnick says when he took him out of the car, he was unresponsive. And then they say, well, his eyes were glassy. So what do you think they should have done? They should have told EMS right away, we have a non-breather. This is seriously developing. Because remember, they only called EMS because they have a protocol. And the protocol says if you tase somebody, you've got to call EMS. So EMS gets a call that says, we tased somebody. Oh, yeah, okay, we'll come and check it out. And they classified that bravo, which was a low-level classification under the EMS protocol. And we would say that if you see somebody who's a non-breather, and he did become a non-breather at some point, his eyes are fixated, he's dying, his eyes are glassy, they should have told EMS, step it up. We now have a man in cardiac arrest. We now have a man, they never took his vitals, they didn't check him. And this is what Owens B. and Jones are talking about. In Jones, they had called EMS. In Owens B., they delayed calling EMS. But the point was that when you see these situations developing, you either do the medical care yourself or at least get instruction from EMS, or kick their butt a bit and call them and say, hey, you've got to get here. And none of that happened because they didn't upgrade the call. They didn't give them the increased information about what was happening. So you're not complaining then that they didn't actually provide CPR? Well, sure I am, but I understand that you don't prove deliberate indifference to a serious medical need simply because you don't provide CPR, because we haven't accomplished that as a precedent yet. And there is some precedent from other circuits that I've cited, but this is a totality of the circumstances argument. Yes, they didn't do CPR, and some of them knew how to do it, so that would have been great, and I'll be able to tell that to the jury. But they also didn't tell EMS that this man is slipping. This man's in serious trouble. Should we do CPR? Do you have advice for it? Should we move him? There's no dialogue going on. This is 2010. We can do better than simply call them on a protocol and then wait. And there's a serious question. Don't forget that none of these officers gave a statement until after they all met in some sort of informal debriefing session where they talked about the incident, and that's got to go before the jury, because what's going on? If this was classified as a homicide by the coroner, where's another homicide that you investigate by letting the suspects meet and chat it up since the only real witness is dead? Now we're going to let them talk for a while and see what their story is, and then he's going to tell me that I don't have enough proof because they've got their story together. Well, their story did slip up a bit because they disagree. Even though they had this chance to meet, they disagree with EMS. He wasn't breathing anymore when EMS got there. And when you add up everything, he even called for his mommy while he's in the car. This is a 40-year-old man who is slipping away, and this business of the pupils being fixed is a very big deal. Tell that to EMS. Not told at all. No updates at all. Propping him up against the leg, glassy eyes, gazed look. I mean, he was dead. I want to be able to argue that to the jury. There's enough evidence in the record that this is a contested issue of material fact and that the officers were not being truthful. So with respect to this appeal, the district judge denied qualified immunity. Correct. And is your position then that we don't have jurisdiction because their fact questions was the basis for the district judge's ruling, or do we have jurisdiction and we should affirm on the merits? Which is your position? This court, yes, you don't have jurisdiction because under Jones, there's a contested issue of material fact that goes to the very core issue on qualified immunity. But it's also an opportunity, by the time we get to this stage, to go ahead and say that on these facts it is appropriate to deny qualified immunity and that would help the development of a law. It's simply dismissing the appeal doesn't do much for the next case. But you could go either way. And similarly, there's no pendant jurisdiction. The city's tried to appeal the fact that the court went on and denied summary judgment to the city on the medical issue. And I'm saying there's no pendant jurisdiction because an officer can get off on qualified immunity. That doesn't really impact whether the city ratified their conduct or not. So what is your theory in terms of why you even assert that the city could be liable? Is it simply the ratification theory or is there some other theory that you are on? On the deliberate indifference of serious medical need, it is the ratification theory. Under Pro Potnick, the Supreme Court said a long time ago that you can have a single incident where the policymaker reviews the conduct of the wrongdoer and then that review becomes the application of policy as viewed through the facts. And then there's ample case law that we've cited from this circuit as well that says when you do an investigation that's not really designed to find out what happened, then you are approving of the conduct of the wrongdoer as consistent with your policy, practice, and procedure. And here, their investigation wasn't designed to find out what happened. They never really stacked up all of the evidence of what was going on in the car and really determined, and this is a homicide for, I mean, really. And it is a fair inference that the city was simply rubber stamping the statements of the officers and didn't really dig, and that is why Mr. Brown's death was not fully and properly investigated. And so the court was right to deny summary judgment to the city. There's no pendant jurisdiction. This court shouldn't entertain the appeal from the city as part of this appeal. There are no further questions. Thank you very much. Thank you. I'd just like to address some things, and I took notes, so I'm going to take them in the order that Al brought them up. The first issue regarding that Al discovered this issue in discovery, talking about the depositions and why didn't he amend his complaint. You can check the dates because it's all part of the record, but the best of my recollection is all the depositions were completed in the summertime of, I believe it was 2012, and our dispositive motions were filed in the summertime of 2013. What I do know is it was about a year apart. So if there were issues that he discovered based on the EMS or EMT's testimony, he had a whole year to amend that complaint. And there is an issue in terms of discovery, in terms of experts and all that sort of thing. We don't know that the court's going to give us those sort of things. There's a reason deadlines are set. It's so we can move litigation forward. And it's not fair for a plaintiff to say, oh, well, we told you long after all the deadlines, but hey, we could have fixed it, we could have fixed it, so therefore we should go forward with it. As to the issues regarding whether or not police and their communication with EMS on the scene, first of all, it's undisputed in the record that there is no distinction between Bravo and Delta in terms of the way EMS responds. You can look at the deposition. I believe it's Sergio Fletcher. He's very clear. It doesn't matter what the coding is. We're moving just as fast. We're going as fast as we can. It doesn't matter what the coding is. We're responding with full life-saving measures. It doesn't make a difference. In addition, there is also undisputed testimony that there was no manner for EMS and police to directly communicate. Police would have had to radio into police dispatch, would have then had to take the time to radio to EMS dispatch, would then would have had to take the time to radio to EMS directly, and we all can remember being little kids and playing the game of telephone and how that's a problem. Moreover, I'd like to just repeat that the serious signs of distress, and this is the testimony from its unanimous, the serious signs of distress did not manifest until police could already hear the EMS sirens approaching, and knowing how long the relay would take, and knowing that they were going to be on scene in a matter of 60 to 90 seconds, which is how long it actually was, it would have really been a fruitless exercise to start radioing in. A couple other quick things. Mr. Gerritsen brought out that Mr. Brown called for his mommy in the back seat of his own car. There's testimony that that's not unusual for people who are being arrested. Our officer said that that happens all the time. And as to this idea that they met together to get their stories together, well, they met together as part of the investigation the city undertook. There is no conspiracy claim here. If there were, if they think there was a conspiracy, they should have brought a civil conspiracy claim. It's not before the court, and any sort of argument involving a conspiracy is a red herring that no jury should ever be able to consider. I think we'll be doing this again right now. Thank you. Do you want us to switch seats? No, you don't need to switch seats. Thank you both for your argument in this case.